458 P.2d 130

Edwin H. BRISKMAN and Dorothy Briskman, Appellants,

v.

DEL MONTE MORTGAGE COMPANY, an Arizona corporation, Appellee.

No. 1 CA–CIV 803.

Court of Appeals of Arizona.

Division 1, Department B.

Sept. 2, 1969.

Leibsohn & Goldstein, by Richard S. Berry, Phoenix, for appellants.

William J. Samuels, Phoenix, for appellee.

HAIRE, Judge.

Plaintiff, Del Monte Mortgage Company, filed an action against the defendants Edwin H. Briskman and Dorothy Briskman to recover damages for breach of warranties contained in an assignment of a real estate commission. Both plaintiff and defendants filed motions for summary judgment. After considering these motions, the trial court entered judgment awarding damages to the plaintiff, and thereafter the defendants filed this appeal. In their briefs both parties state that there are no issues of material fact.

The basic questions presented to this court are (1) whether the trial court erred in its ruling that as a matter of law upon the undisputed facts of this case, the appellants breached warranties made to the appellee, and (2) whether in reaching that result the trial court improperly considered extrinsic evidence inadmissible under the parol evidence rule.

The real estate commission was based upon a sale from Kaylar Investment Corporation (Kaylar) to some 21 individuals, and was originally payable to the broker who handled the sale, Wall Street Realty. The sale of the land was evidenced by escrow instructions and a subsequent trust agreement providing for installment payments, with the deferred balance of the real estate commission to be disbursed from these installments when received by the trustee. Wall Street Realty assigned the deferred balance of the commission to the defendant Briskman. Some two years later Briskman by "Deed of Assignment" containing certain express warranties further assigned a portion of the deferred commission balance to Commercial Discount Corporation, plaintiff's predecessor in interest. Thereafter the purchasers of the land defaulted in the payment of the installments required under the trust agreement, and no further payments were made on the deferred commissions.

The real estate commission agreement between the seller, Kaylar, and the broker, Wall Street Realty, apparently was not reduced to writing.[1] However, reference was made to the commission in the escrow agreement[2] and in the trust agreement.[3] The only evidence as to the commission agreement other than the reference thereto in the escrow instructions and trust agreement was the testimony of Mr. Nathanson, Kaylar's president. He stated in his deposition and in his affidavit in support of plaintiff's motion for summary judgment that the agreement between Kaylar and Wall Street Realty was that the deferred balance of $50,000.00 was payable at $5,000.00 per annum from the installments to be paid by the buyers and that " * * * in the event the buyers discontinued paying, the commissions were to cease, * * * "; that said commission " * * * was only to be owed and paid from annual installments * * *."

The "Deed of Assignment" from Briskman to appellee contained the following warranties:

"IV—Said assignor covenants and warrants that his right to said moneys actually exists, is absolutely vested in him and irrevocable, and is not voidable, that said moneys are presently still owing to him; that said right is subject to no limitations or defenses of whatsoever nature; . . . that no facts exist at the time of this assignment which do now or will hereafter in any way lessen either assignor's right to said moneys or the likelihood that said moneys will be paid when due; * * *."

■ Appellants in their opening brief apparently misconstrue the appellee's theory of the case and direct much of their ar-

---

1. The question of whether or not the escrow instructions or the trust agreement which were signed by the seller would constitute a sufficient memorandum "in writing and signed by the party to be charged" to comply with the requirements of A.R.S. Sec. 44–101 has not been raised by the parties or considered by the court.

2. "From proceeds of cash payment, pay broker's commission of $75,000.00 to the following: Wall Street Realty 121 West Camelback Road, Phoenix, Arizona $25,000.00 on close and $5,000.00 from each annual installment due under Trust without interest."

3. "It is understood and agreed between the parties hereto, that all funds arising and accruing from the lease or sale of any of the property held under this Trust shall be paid to the Trustee and thereafter disbursed by the Trustee as follows:

 * * * * *

"(4) Commission of $50,000.00 to Wall Street Realty payable $5,000.00 per year from annual installments or 10% of principal release price without interest until paid."

gument to the question of whether or not the above quoted warranties constitute a guaranty of payment. From an examination of the memoranda submitted by appellee in the trial court and appellee's answering brief filed in this court, it is clear that appellee has never contended that these warranties constitute a guaranty of payment. Rather, it was appellee's contention that at the time of the making of the assignment the warranties were breached because Briskman's right to the full amount of the assigned moneys was not "absolutely vested in him and irrevocable"; that said right was subject to "limitations or defenses"; and that there were facts in existence at the time of the assignment which did materially lessen the assignor's right to said moneys and the likelihood that said moneys would be paid when due. In view of the terms of the agreement between the broker and seller as stated by Mr. Nathanson, we believe that the appellee's position is well taken.

As stated in Lockett v. Drake, 43 Ariz. 357, 31 P.2d 499 (1934), the law is well established that in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale and they have agreed fully on the terms and have entered into a binding contract for such sale, his duties are at an end and his commission is fully earned and it is immaterial that one or the other of the parties thereafter defaults and the sale is not fully effective. However, here we do have an express contract to the contrary limiting the liability for the deferred balance of the commission. Inasmuch as the appellants did not in any way dispute Mr. Nathanson's deposition and affidavit, we must assume that the agreement between the seller and the broker, Wall Street Realty, was exactly as stated by Mr. Nathanson. From the terms of the agreement between the seller and broker it is readily apparent that the warranties made by Briskman were breached. His right to receive the entire amount of the commissions was not absolute and irrevocably vested, but rather was subject to a con-

tingency. His right to receive the entire amount was certainly subject to "limitations and possible defenses." Likewise, there were facts in existence which lessened the likelihood of payment of the entire amount. These limitations and facts were not readily apparent to appellee from the references to the commission in the escrow and trust agreements, but in fact did exist because of the agreement between the original broker and the seller.

It is immaterial that Briskman did not know of that agreement and the resulting limitations on the right to receive the commission. This is not an action based upon fraud. In a contract action for breach of warranty, the obligation imposed by the warranty is absolute and is imposed as a matter of law irrespective of whether the warrantor knew or should have known of the falsity of his representations. Mary Pickford Co. v. Bayly Bros., 12 Cal.2d 501, 86 P.2d 102 (1939); Rutherford v. Standard Engineering Corporation, 88 Cal.App. 2d 554, 199 P.2d 354 (1948); 77 C.J.S. Sales § 304 (1952).

However, appellants contend that there was no "specific contract to the contrary" within the meaning of the exception to the rule stated in *Lockett, supra*. In this regard, appellants cite some cases wherein it is stated that a provision in the sales agreement directing payment of a brokerage commission out of specified funds (as does the trust agreement herein) does not constitute a "specific contract to the contrary." In so doing, however, appellants fail to meet the argument of the appellee. The appellee does not contend that the trust provisions (referring to the manner of payment) constitute a "specific contract to the contrary", but rather that the actual agreement between Kaylar, the seller of the real property and Wall Street Realty, the procuring broker, as set forth in the deposition and affidavit of Mr. Nathanson was a "specific contract to the contrary."

Appellants next contend that the evidence which established the existence of the agreement between the seller and

Wall Street Realty was inadmissible under the parol evidence rule, and thus should not have been considered. While a court must review the contents of supporting affidavits and depositions in ruling upon a motion for summary judgment, only such matters stated therein as would be admissible in evidence may properly be considered by the court, Rule 56(e), Rules of Civil Procedure, 16 A.R.S.; 6 Moore's Federal Practice, Sec. 56.11 (1.–3) at 2146 (1965). Thus in reaching its decision as to the granting of a motion for summary judgment, the court should exclude from its consideration extrinsic evidence which would violate the parol evidence rule. Paramount Pest Control Service v. United States, 304 F.2d 115 (9th Cir. 1962).

■ If the seller, Kaylar, and the procuring broker, Wall Street Realty, had entered into a contract putting their agreements into writing in such terms as to exclude any uncertainty as to the object or extent of their obligations, then extrinsic evidence of previous negotiations or understandings relating thereto would not be admissible. Higgins v. Arizona Savings & Loan Association, 90 Ariz. 55, 365 P.2d 476 (1961). However, Kaylar and Wall Street Realty have not entered into any such written agreement. The provisions in the trust agreement only direct the trustee to disburse certain sums in a specified manner upon receipt of those funds from the buyers. Thus, it cannot reasonably be argued that the provisions in the trust agreement were intended as a complete integrated writing setting forth the entire agreement between the broker and the seller. Further, in our opinion, the legal effect of that instruction to the trustee is neither enlarged, varied nor altered by extrinsic evidence relating to the liability of the seller in the event the installments are not received by the trustee.

Appellants place much reliance upon James v. Hiller, 85 Ariz. 40, 330 P.2d 999 (1958). It is true that in *Hiller* the court considered a contract of sale containing a provision that the deferred commission balance would be payable "in cash from the sale of these properties", and arrived at a decision awarding the broker the full amount of his commission, notwithstanding the fact that the sale was never consummated. However, the case does not support appellants' position here. First, in *Hiller* the broker was a party to the written contract which the court was considering. Second, in *Hiller* the court *did* consider extrinsic evidence in arriving at its decision. In *Hiller*, the court stated:

"The case was tried upon the theory that there was an ambiguity as to whether the instruments created a present or contingent liability. We are referred to no objection by either party to such procedure and evidence was submitted pro and con as to the intention of the parties in this regard. We think that from the instruments and the evidence the court was fully justified in ruling that the obligation was a present existing obligation and not contingent depending upon a condition precedent." (85 Ariz. at 44, 330 P.2d at 1002).

*Cf.* Maslin v. Rucker, 7 Ariz.App. 257, 438 P.2d 326 (1968). The other cases cited by appellants are likewise readily distinguishable.

The judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.