**E. S. TUBIN**

v.

**Meyer RABIN, a/k/a Meyer Raben, et al.**

**Civ. A. No. CA 3–2640–C.**

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 23, 1974.

Lawrence E. Ackels, Weinberg, Sandoloski & McManus, Dallas, Tex., for plaintiff.

Mike Joplin (for C. D. Wyche), Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., James A. Knox (for the bank), Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., for defendants.

## SUPPLEMENTAL OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Defendant Fair Park National Bank has moved pursuant to F.R.Civ.P. 52(b) that the Court amend its Findings of Fact and Conclusions of Law appearing in the Court's original Opinion, hence this Supplemental Opinion.

Defendant Bank complains of the Court's statement that "Mrs. Fern Harbison, Assistant Vice President of the Bank, testified that she had the man identified as Reuckhaus again endorse the check", pointing out that this particular testimony was not introduced at trial. It appears from review of the record that Mrs. Harbison gave two depositions in this case, the second of which does contain testimony that Reuckhaus himself appeared in Dallas with the check. However, only the first deposition of Mrs. Harbison was introduced into the record. That particular sentence in the Court's Opinion was not necessary to a determination of the case and is withdrawn from the Court's original Opinion filed herein on September 26, 1974. As pointed out in the original Opinion, Mr. Reuckhaus emphatically, positively, and categorically denied that he was present at the Bank on December 19, 1967, and his testimony on this point is entirely credible.

Defendant Bank also claims that the Court did not pass upon all of its affirmative defenses. One of the defenses alleged by Defendant Bank is that Tubin as drawer of the check does not have standing to sue Defendant Bank. The record shows that First National Bank of Albuquerque, New Mexico, was the drawer and not Tubin. Tubin's status with regard to the check is that of "rightful owner" and Defendant Bank's contention that Tubin does not have standing is without merit.

Defendant Bank also complains that the Court did not treat its defense involving the "fictitious payee rule" set forth in Section 3–405(1)(c) of the U.C.C. That rule does not apply to relieve the Defendant of its liability herein because the Bank failed to prove the statutory requirement that the fraudulent endorser was "supplied by an agent or employee" of the "drawer or maker" of the check. It is again pointed out that Tubin was not the *drawer* of the check and additionally Reuckhaus, the only agent involved in the transaction, acted in behalf of Tubin and not as agent of the First National Bank of Albuquerque, the drawer of the check.

Defendant also argues that the Plaintiff should not recover anything since he failed to prove any loss caused by Defendant's conversion of the check, citing cases which denied recovery to a plaintiff who as drawer of fraudulently endorsed checks fully intended the payees of those checks to receive the proceeds. In this case, the drawer's intent was carried out and the Court reasoned that the plaintiff was not injured and therefore should not recover anything. It clearly appears that the owner's intended result did not occur here. Certainly Tubin had no intention that the proceeds of the check be turned over to C.I.C. and Defendant Rabin upon the forged endorsement of C. D. Wyche. The underlying contractual obligation, which the Reuckhaus special endorsement sets

forth in part, required Wyche and C.I.C. as payees of the check to repay that amount to Tubin if the $2,850,000 loan was not effectuated within 30 days thereafter. This asserted defense is without merit.

■ Defendant Bank also contends that Reuckhaus was negligent and that his negligence contributed to the forging of the "Wyche" endorsement and that therefore Section 3-406 of the U.C.C. prohibits Plaintiff's recovery. The evidence introduced at trial wholly fails to show that Reuckhaus was negligent in any respect.

■ Defendant Bank also asserts that C. D. Wyche either ratified his fraudulently produced endorsement or is precluded from denying it under Section 3-404(1), pointing to an April 24, 1968, letter signed by Wyche acknowledging receipt of $5,250 as a "non-refundable deposit". Defendant Bank urges that this letter should relieve the Bank of liability or that its liability should be reduced to the extent of the $5,250. It claims that this letter removes any interest which he might have in the proceeds of the Cashier's Check and therefore Defendant Bank has no liability with regard to the check since C.I.C., the copayee, received all the proceeds as was intended. The April 28, 1968, letter refers to an agreement whereby Wyche was to receive ten percent of the $2,850,000 loan in return for his guaranteeing the loan. The letter acknowledging the $5,250 specifically refers to this special arrangement between Wyche and C.I.C. and has nothing to do with the $14,250 Cashier's Check purchased by Tubin. The evidence wholly fails to show any relationship between the $5,250 and the $14,250. Additionally, it is pointed out that Defendant Bank did not seek any recovery or credit from Tubin or Wyche for the $5,250. Defendant Bank's contentions in this regard are without merit.

■ Defendant Bank also claims that it is not liable under the provisions of Section 3-419(3) of the U.C.C. The Bank claims that its status as a "depository or collecting bank" makes it liable to Tubin only to the extent of the proceeds still remaining in its hands and since none of the $14,250 remains, Tubin is entitled to nothing. This section of the Code provides that: "a *representative*, including a depository or collecting bank, who has in good faith and in accordance with the *reasonable commercial standards* applicable to the business of such representative *dealt* with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands." This section of the Code is not applicable to the transaction involved here. No Texas courts have rendered decisions interpreting this section but it must be presumed that the Texas Legislature in adopting both Sections 3-419(1)(c) and 3-419(3) intended a reasonable result. The statutory scheme of the U.C.C. requires a depository or collecting bank to authenticate the signatures on any instrument presented to it. Section 4-207, for instance, imposes liability upon a collecting bank when it passes a forged instrument along to a payor bank. As between a collecting bank or depository bank and the true owner of a forged negotiable instrument, 3-419(1)(c) specifically holds the bank liable for converting the instrument. Defendant Fair Park National Bank claims that it falls within the application of this section as a "representative collecting or depository bank". Section 1-201(35) defines "representative," as including an agent, officer or any other person empowered to act for another. The evidence in this case does not show that Defendant Bank was a "representative" within this definition. In my opinion Section 3-419(3), when it refers to the representative having "dealt with an instrument or its proceeds on behalf of one not the true owner," is concerned with an entirely different transaction than the typical "honoring a check" transaction. *See,* Ervin v.

Dauphin Deposit Trust Co., 3 UCC Rept. Serv. 31 (Penn.Common Pleas Court, 1965). As one case reasoned, the U.C.C. comments to this section refer to a line of cases primarily involving defendants that had acted as investment brokers and had marketed negotiable securities, remitting the consideration to their customers. The relationship in those cases between the representative and their customers typified the true agency type, and therefore differed substantially from the impersonal debtor-creditor relationship established in the banking world.

> Unlike the ordinary bank collection transaction, in which the collecting bank and its customers have tacitly agreed a debtor-creditor relationship will emerge upon collection, the ordinary agency transaction gives rise to no such debt when the agent receives funds intended for the principal. Such funds must be kept separate from the agents' own funds and identified as the property of the principal. Thus, when the true agent remits the amount of an instrument to his customer, the agent actually does part with the proceeds. Couper vs. Union Bank, 12 UCC Rept.Svc. 209, 222 (S. Ct. of Calif.1973).

Thus, it is this true agency situation rather than the typical bank transaction involved in this case that 3–419(3) appears to be addressed.

■ Section 3–419(3) also does not apply in this case because the defendant Fair Park National Bank failed to prove that it dealt with the Cashier's Check in a commercially reasonable manner. When the group of men presented the check for negotiation on December 19, 1967, the defendant's officials failed to authenticate the identity and signature of C. D. Wyche, one of the co-payees of the check. This is simply a case where the Bank relied upon its customer. Section 3–116 requires both signatures on a check made payable to the order of two payees in order for the check to be properly negotiated. The failure of Fair Park National Bank to

authenticate the signature of a non-customer was commercially unreasonable. *See,* Robert A. Sullivan Construction Co. v. W. Mannus National Bank, 290 So.2d 561 (1974).

Accordingly, the Court adheres to its original determination of this case. Judgment will be rendered in favor of Plaintiff Tubin against Defendants Rabin, Consumer's Investment Company, and Fair Park National Bank, jointly and severally, for $14,250 together with interest from January 18, 1968 (30 days after the date that the check was cashed), and further that Plaintiff recover nothing against the Estate of C. D. Wyche. Costs are taxed against Defendants Rabin, Consumer's Investment Company, and Fair Park National Bank of Dallas.