**GENERAL ACCIDENT FIRE & LIFE AS-SURANCE CORP., LTD., Appellant,**

**v.**

**CITIZENS FIDELITY BANK AND TRUST COMPANY, Appellee.**

Court of Appeals of Kentucky.

Feb. 21, 1975.

Joseph C. O'Bryan, Carey & O'Bryan, Louisville, for appellant.

Eugene B. Cochran, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellee.

REED, Chief Justice.

The issue to determine is whether the employer of a dishonest employee or the collecting bank must bear the loss where the employee, who has authority to issue drafts on his employer's account, makes drafts payable to an existing person whom he does not intend to receive the proceeds of the draft and forges the endorsement of such payee and procures the proceeds of the instrument for his own use. In the case before us, the trial judge, in a situation where the operative facts were undisputed, decided that as a matter of law the employer of the dishonest employee must bear the loss as between it and the bank which paid out cash on the instrument. No liability on the part of the drawee bank is asserted in the action. Although the parties argue issues of negligence and contributory negligence, we conclude that in the narrow factual situation presented, the Uniform Commercial Code, and particularly KRS 355.3–405, clearly operates to place the loss on the employer. We, therefore, affirm the judgment.

The employer, an insurance company, employed Edward Cadden as a small claims clerk in its Louisville, Kentucky, branch office. Cadden's duties were to handle small claims. The employer gave Cadden specific authority to settle any claim on his own decision for any amount up to $250.00. The employer provided the employee blank drafts to pay these small claims and authorized him to draw and sign these drafts. Prior approval or counter signature by any other official of the employer was not required.

Cadden selected inactive claim files and drew drafts payable to the claimant and signed these drafts on behalf of his employer. Cadden then endorsed the name of the payee on the back of the drafts and took them to a nearby branch of Citizens Fidelity Bank and Trust Company where he cashed them. Cadden was well known to the bank employees as an employee of the insurance company with authority to sign drafts for his employer. Citizens did not require Cadden to personally endorse the drafts nor to produce the payee.

After Citizens cashed these drafts, it would send them to the drawee bank, First Pennsylvania Bank and Trust Company, in Philadelphia, which was the depository of the employer. The drawee bank would present the fraudulent drafts together with bona fide drafts to the employer for acceptance or rejection by noon of the day of presentment. The employer accepted these drafts and thereupon the drawee bank charged the account and remitted the amount of the draft to Citizens.

When Cadden's scheme was discovered, it appeared that he had embezzled approximately $40,000. The employer was covered by a blanket bond which covered employee dishonesty, but the bond carried a $10,000 deductible amount. Apparently, the employer recovered all of its losses caused by Cadden from the surety on the bond except for the $10,000 deductible amount. The employer thereupon sued Citizens for the $10,000 uninsured loss and for an additional $10,000 in damages which it alleged represented investigation and litigation expenses.

The trial judge granted summary judgment in favor of Citizens and dismissed the employer's action. The deposition evidence established no genuine issue of a material fact. It seems to us that the only question presented was which party should bear the loss as between the two of them.

KRS 355.3–405(1)(b) provides that an endorsement by any person in the name of a named payee is effective if a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument. "The effect of Code Sec. 3–405 is to put the loss on the customer and not on the drawee bank." Anderson, Uniform Commercial Code, Sec. 3–405:6, 934 (1971).

The undisputed facts establish that Cadden was authorized to draw the drafts and he intended the payees to have no interest in the instruments; therefore, KRS 355.3–405(1)(b) rendered the forged endorsement "effective." Title to the instrument passed as though there had been no forgery, and Citizens, as a good-faith transferee, was entitled to payment from the parties liable on the instrument.

It is interesting to note that KRS 355.3–405(1)(c) requires the same result where "an agent or employe of the maker or drawer has supplied him with the name of the payee intending the latter to have no interest [in the instrument]." This provision operates to include payroll or accounts-payable clerks within the scope of the section. The official comment to the Uniform Commercial Code justifies this expansion upon the principle that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The draftsmen in their commentary said:

"The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of its employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee."

The employer complains because Citizens did not require Cadden to add his own endorsement. Whether the addition of Cadden's endorsement would have assisted the employer to discover its employee's scheme is problematical. It might well have operated to lull the employer into a feeling of security. In any event, Cadden was well known to the bank employees as an authorized drawer of drafts on his employer, hence the failure to require his endorsement could hardly be characterized as bad faith, neither was it a substantial factor in causing the loss.

It seems that the particular statutory section with which we deal is a banker's provision intended to narrow the liability of banks and broaden the responsibility of their customers. See White & Summers, Uniform Commercial Code, Sec. 16–8, 549 (1972).

In the instant case we are not presented with an employee removed from the act of signing on behalf of the maker, nor are we confronted with a payee who might have a legitimate claim against the employer. We deal rather with an employee directly authorized to sign and issue drafts who forged the endorsement of a payee who had no claim and was not intended to have any interest in the instrument. Therefore, whatever may be the proper boundaries and limitations to the operation of KRS 355.3–405(1)(c), we need not deal with such problems in this case. It is sufficient to say that if KRS 355.3–405(1)(c) operates to place the loss upon the employer of an unfaithful employee in those instances where it does clearly apply and in such instances includes no qualification for the negligence of the collecting bank, then the result in the situation before us of the unfaithful employee who is authorized to sign drafts without prior approval must require the employer and not the collecting bank to bear the loss.

The judgment is affirmed.

All concur.