595 P.2d 206

CONTINENTAL BANK, an Arizona
Corporation, Appellant,

v.

WA–HO TRUCK BROKERAGE, an Arizo-
na Corporation, and Richard E. Stahl,
d/b/a Stahl Trucking, Appellees.

No. 1 CA–CIV 3866.

Court of Appeals of Arizona,
Division 1,
Department B.

March 15, 1979.

Rehearing Denied May 1, 1979.

Review Denied May 22, 1979.

Robbins, Green, O'Grady & Abbuhl by Edmund F. Richardson, John D. Lyons, Jr., Victor W. Riches, Phoenix, for appellant.

Ryley, Carlock & Ralston by Raymond M. Hunter, John W. Wall, Phoenix, for appellees.

## OPINION

JACOBSON, Judge.

After the smoke has cleared, this appeal narrows to the question of whether the Bank's handling of checks bearing unauthorized signatures was, as a matter of law, not in accordance with reasonable commercial standards.

This litigation was instituted by plaintiffs-appellees, Wa-Ho Truck Brokerage and Richard Stahl, dba Stahl Trucking (plaintiffs) against defendant-appellant, Continental Bank (Bank) for conversion and breach of warranty, involving the misappropriation of 114 checks belonging to plaintiffs. On cross-motions for summary judgment, the trial court granted judgment in favor of the plaintiffs and against the Bank for $32,928.42. The Bank has appealed.

The relevant facts are that the plaintiffs are affiliated and share office space, together with a company known as Alpine Truck Rental, in the business of brokering transportation of merchandise and of securing loads for certain trucking companies. During the periods pertinent to this litigation, all three companies were managed by a single individual.

In 1973, plaintiffs employed Charles Randall Waghorn as a bookkeeper. Shortly after he was hired, Waghorn's duties expanded to include duties of writing and endorsing checks, making deposits, reconciling bank statements, making all entries in the plaintiffs' books, including accounts payable and receivable and paying accounts payable. Taking the facts in a light most favorable to the party opposing the motion

for summary judgment, we conclude for the purposes of this appeal only, that Waghorn's duties were performed without internal controls, review or supervision.

In August, 1973, Waghorn opened a checking account at the Bank in the name of "Wag's Drivers Service, Waghorn, C. R. —DBA." On the signature card for this account, Waghorn listed his occupation as "Wa-Ho Truck Brokerage and Alpine Truck Rental—DBA" and "C. R. Waghorn" as owner. To this account Waghorn deposited his salary checks drawn on Wa-Ho's and Alpine Truck Rental's accounts and made payable to Wag's Drivers Service.

In October, 1973, Waghorn began diverting checks made payable to the plaintiffs to his own account at the Bank. This was accomplished by using the rubber stamp endorsement entrusted to him by plaintiffs, endorsing checks made payable to the plaintiffs with the appropriate stamp and depositing the check in his Wag's Drivers Service account. In this fashion, one hundred and one checks of this type (designated by the parties as "incoming checks"), in the total face amount of $29,650.62, were diverted to his account with the Bank.

In addition, Waghorn deposited to the Wag's Drivers Service account thirteen checks in the face amount of $3,277.80 which were drawn upon the plaintiffs' checking accounts at First National Bank and were made payable to third persons (designated as "outgoing checks" by the parties). This was accomplished by Waghorn presenting to his employers checks payable to persons to whom the plaintiffs had previously owed money, but who had been paid. The duplicate check was then endorsed by Waghorn by forging the signature of the payee and then stamping each check with the nonrestrictive endorsement, "Wag's Drivers Service." At the time that suit was brought, Waghorn's account at the Bank had a zero balance.

Plaintiffs' complaint against the Bank was in two counts. Count One covered the "incoming checks" and the liability of the Bank on this count was predicated upon a conversion theory. Count Two covered the "outgoing checks" and the liability of the Bank on this count was based upon a theory of breach of warranty. The Bank's answer to the complaint basically admitted the factual allegations concerning Waghorn's defalcations, but denied liability and raised the defense of "contributory negligence."

Extensive discovery followed, including the plaintiffs' serving requests for admissions on the Bank. In response to these requests, the Bank again basically admitted the modus operandi of Waghorn and in addition admitted that the signatures of the payees on the outgoing checks were forgeries and that the endorsements on the incoming checks were unauthorized. The Bank further admitted that prior to being informed of Waghorn's defalcations, the Bank had not investigated the endorsements or other signatures on the checks deposited to Waghorn's account, nor had the Bank investigated any of the business relationships reflected on Waghorn's signature card.

Based upon this state of the record, plaintiffs moved for summary judgment, contending that as a matter of law the Bank was liable for conversion on the incoming checks and was liable for breach of warranty as to the outgoing checks. The Bank filed a response in opposition to the motion and its own cross-motion for summary judgment. The basis of the response was that it was not liable in conversion on the incoming checks as it acted in good faith and in accordance with reasonable commercial standards of the banking business (called the "commercial reasonableness" defense); and that there were no warranties running from the Bank to the plaintiffs with respect to the thirteen outgoing checks, and in addition it was protected as to the outgoing checks by the "padded payroll" doctrine embraced in A.R.S. § 44–2542(A)(3). [U.C.C. § 3–405(1)]. The Bank further contended that it was entitled to summary judgment because plaintiffs were negligent in maintaining their financial books, records and accounts (called the "substantial contribution" defense).

The plaintiffs countered these defenses by contending that the defenses of commercial reasonableness and substantial contribution are affirmative defenses which were not pled; that the Bank's conduct as admitted on the record was not commercially reasonable as a matter of law; that the issue of plaintiffs' negligence was a fact question for the jury; and that as to the outgoing checks, they were holders and the padded payroll defense was not available to the Bank.

The Bank responded by contending that the defenses raised were not affirmative defenses, but if they were, it requested leave to amend its answer to specifically plead these defenses. In addition, the Bank submitted three affidavits from admitted experts in the banking business that they had reviewed the records and procedures followed by the Bank in handling Waghorn's account and that in their opinion the procedures followed by the Bank comported with reasonable commercial standards of the banking industry.

With these various contentions before it, the trial court granted plaintiffs' motion for summary judgment.

On appeal, the Bank urges the following contentions:

(1) That the Bank's actions complied with reasonable commercial standards and thus the trial court erred in granting summary judgment on the incoming checks;

(2) That the endorsements on the incoming checks were in fact authorized under the Uniform Commercial Code and therefore no liability attaches;

(3) That the plaintiffs have no direct cause of action against the Bank on the outgoing checks; and

(4) That by reason of the negligence of the plaintiffs and the padded payroll doctrine, the Bank is relieved of liability.

The plaintiffs on appeal contend:

(1) That the defense of commercial reasonableness was not pled in the trial court and thus the Bank has waived this defense;

(2) That the affidavits attempting to establish commercial reasonableness do not comply with Rule 56, Arizona Rules of Civil Procedure, and therefore the trial court properly disregarded them;

(3) That in any event, as a matter of law, the Bank's action did not comport with commercial reasonableness;

(4) That the issue of the endorsements on the incoming checks being authorized was not raised in the trial court, and the Bank in fact admitted they were unauthorized; and

(5) That as to the outgoing checks, they became "holders" entitling them to have a direct cause of action against the Bank and the padded payroll defense is not available to the Bank.

Before we reach the law in relation to the Bank's liability and its defenses, we will deal with the parties' procedural contentions.

■ First, the plaintiffs contend that the Bank has waived its commercial reasonableness defense by failing to affirmatively plead it. If we assume that the commercial reasonableness defense is one of the affirmative defenses required to be specifically pled by Rule 8(d), Arizona Rules of Civil Procedure, the fact that this defense was presented to the trial court supported by affidavits in connection with the motions for summary judgments sufficiently raised the issue in the trial court so as to be reviewable here. The rule is stated in 6 Moore's Federal Practice ¶ 56.11[3], at 56–252 and 253 (2d ed. 1976):

"Now consider the question as to whether a defendant may, subsequent to answer, support a motion for summary judgment by raising defenses in affidavits, particularly affirmative defenses, which were not raised in the answer. Rule 8(b), relative to denials, is the rule generally governing negative defenses; Rule 8(c) [in Arizona, Rule 8(d)] requires affirmative defenses to be set forth affirmatively; and Rule 12(h) [in Arizona, Rule 12(i)] provides generally that defenses not presented by a pre-pleading

motion or by answer (or reply) are waived. There is authority that defenses not pleaded in defendant's answer may not be raised by affidavits on his motion for summary judgment. This is highly technical and illiberal. Either the answer should be deemed amended to conform to the proof offered by the affidavits or a formal amendment permitted, the affidavits considered, and the motion for summary judgment decided under the usual rule pertaining to the adjudication of summary judgment motions."

Arizona has followed Moore's liberal amendment rule. *See American National Rent-A-Car, Inc. v. McNally,* 104 Ariz. 301, 451 P.2d 882 (1969).

■■■ Next, the Bank argues on appeal that in fact the various endorsements on the incoming checks were "authorized." We need not reach the merits of this argument. First, this issue was not presented to the trial court and therefore, under our normal appellate rules of review, this issue is not reviewable on appeal. *Pool v. Peil,* 22 Ariz.App. 417, 528 P.2d 168 (1974). Second, the Bank was specifically requested to admit whether the "payee's endorsement on each of the incoming checks is an unauthorized endorsement as defined in § 44–2208(43) of the Arizona Uniform Commercial Code, Title 44, Arizona Revised Statutes." The Bank admitted the correctness of this request.

Rule 36(b), Arizona Rules of Civil Procedure, provides in part: "Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." The Bank having failed to request the trial court to be relieved of this admission, is bound by the admission on appeal.

Finally, the plaintiffs contend that the affidavits filed by the Bank which purportedly sought to establish the commercial reasonableness of its actions are couched in such conclusional terms so as to be improper under Rule 56(e), Arizona Rules of Civil Procedure. The pertinent portion of this rule provides:

"When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." (Emphasis added.)

The affidavits established that the affiants were familiar with banking practices in Phoenix, Arizona concerning third party checks bearing two unrestricted endorsements. The affiants then stated that they had reviewed the depositions on file, the requests for admissions and answers, the non-uniform interrogatories and the various motions made by the parties. Each affiant then swore:

"Based upon the information reviewed and his own personal experience and knowledge, it is his opinion that in accepting the subject checks for deposit, the Continental Bank acted in good faith and in accordance with reasonable commercial standards applicable to the business of banking."

■■■ While the affiants' opinion is couched in conclusional terms, we do not believe this to be fatal. The purpose of the Rule 56(e) requirement of "specific facts," is to insure that the affidavits contain only matters which would be admissible in evidence, thus insuring the materiality of the facts. *See Briskman v. Del Monte Mortgage Co.,* 10 Ariz.App. 263, 458 P.2d 130 (1969). However, unlike a lay witness, an expert witness is allowed to testify on facts or data not admissible in evidence (Rule 703, Arizona Rules of Evidence); may testify as to ultimate facts (Rule 704, Arizona Rules of Evidence); and may "testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data . . . ." (Rule 705, Arizona Rules of Evidence). Based upon these rules of evidence, we hold the matters contained in the affidavits were admissible in evidence as expert testimony and therefore the trial court should have considered them in ruling on the motion for summary judgment.

This, then, brings us to the merits of the parties' respective positions.

## INCOMING CHECKS

The plaintiffs' cause of action for conversion on the incoming checks is based upon A.R.S. § 44–2556 [U.C.C. § 3–419] which provides in part:

"A. An instrument is converted when:

\*     \*     \*     \*     \*     \*

"3. It is paid on a forged indorsement."

"Forged indorsement" in this context has the same legal effect as an "unauthorized signature" under A.R.S. § 44–2541. [U.C.C. § 3–404]. *See Merchants & Manufacturers Association v. First National Bank of Mesa, Arizona*, 40 Ariz. 531, 14 P.2d 717 (1932); *Salsman v. National Community Bank of Rutherford*, 102 N.J.Super. 482, 246 A.2d 162 (1968).

The Bank's defense of commercial reasonableness[1] is based upon Subsection C of that same statute (A.R.S. § 44–2556) which provides, in part:

". . . a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

In addition, based upon the plaintiffs' conduct in this matter, the Bank has evoked the substantial contribution defense provided in A.R.S. § 44–2543 [U.C.C. § 3–406], which provides:

"Any person who by his negligence substantially contributes to . . . the making of an unauthorized signature is precluded from asserting the . . . lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

As can be noted, a prerequisite to the Bank's invoking both the commercial reasonableness defense and the substantial contribution defense is that the Bank must have acted in good faith and in accordance with reasonable commercial standards.[2]

Since we have held that the Bank has raised at least a factual dispute, through affidavits, that it acted in accordance with reasonable commercial standards as to the incoming checks, the plaintiffs can only prevail on this issue, if, as a matter of law, the Bank's conduct did not rise to that standard.

█ In order to focus on this standard, the conduct complained of needs to be reiterated. The Bank's conduct consisted of accepting for deposit, third party checks payable to an entity other than the depositor where the payee's endorsement was rubber stamped (admittedly an unrestricted endorsement), and the depositor's signature card bore business relationships similar to that of the payee, but without investigation into the authenticity of the first endorsement or into the authenticity of the business relationships reflected on the signature card.

█ Neither party cites Arizona cases dealing with this issue.[3] Both parties, however, have cited several cases from other

---

1. We assume, without deciding, since the issue has not been presented to us, that the defense based upon A.R.S. § 44–2556(C) is available to the Bank under the circumstances presented here. For a contrary conclusion, see *Tubin v. Rabin*, Supp. Opinion, 389 F.Supp. 787 (N.D. Tex.1974), aff'd, 533 F.2d 255 (5th Cir. 1976) and *Cooper v. Union Bank*, 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973). *See also Messeroff v. Kantor*, 261 So.2d 553 (Fla.App.1972).

2. The plaintiffs do not contend that the Bank acted in bad faith and therefore we need concern ourselves only with the reasonableness standard.

3. The recent case of *United Bank of Arizona v. Mesa N. O. Nelson Company, Inc.*, 121 Ariz. 438, 590 P.2d 1384 (1979) touches on the issue of commercial reasonableness, but is not helpful under the factual situation presented here.

jurisdictions dealing with the commercial reasonableness of banks in handling forged or unauthorized endorsements. We have read all the cases cited to us and find none directly on point. Generally, the cases cited by the plaintiffs stand for the proposition that where the payee is a corporation or the true payee's endorsement is in a special capacity, the depositing of that check to an individual's personal account or delivering the proceeds to an individual without ascertaining the capacity of the individual to act on behalf of the corporation or in the special capacity is not in conformity with reasonable commercial standards of the banking business. For manifestation of this rule, see *Fargo National Bank v. Massey-Ferguson, Inc.*, 400 F.2d 223 (8th Cir. 1968); *Salsman v. National Community Bank of Rutherford*, 102 N.J.Super. 482, 246 A.2d 162 (1968); *Belmar Trucking Corp. v. American Trust Co.*, 65 Misc.2d 31, 316 N.Y. S.2d 247 (Civ.Ct.1970); *Mott Grain Co. v. First National Bank & Trust Co. of Bismarck*, 259 N.W.2d 667 (N.D.1977); *Swiss Baco Skyline Logging, Inc. v. Haliewicz*, 18 Wash.App. 21, 567 P.2d 1141 (1977). However, we are convinced that what constitutes reasonable commercial standards must be decided in the context of specific facts. *See* Note, *Forgeries and Material Alterations: Allocation of Risks Under the Uniform Commercial Code*, 50 Boston Univ.L. Rev. 536, 547 (1970).

The case coming closest to the facts under consideration is *Dominion Construction, Inc. v. First National Bank of Maryland*, 271 Md. 154, 315 A.2d 69 (1974). In that case, the maker of the check was in the construction business and intended to make its check payable to both its subcontractor (Town and Country Decorating), and the sub-contractor's material supplier (Conwed Corporation). It did so by making the check payable to "Town & Country Decorating and Conwed." (The trial court held that the maker, in failing to designate Conwed as a separate entity "contributed substantially" to the subsequent unauthorized endorsement.) The check was given to an employee of Town and Country Decorating, who took it to the defendant bank and opened an account with that bank under the title of "Town & Country Decorating and Conwed." The employee explained that he was in the acoustical tile business and that he did business under that name. He further furnished the bank with business address, home address, telephone numbers and his social security number. The court held under these facts that a trier of fact could conclude that the bank acted in a reasonable commercial manner, in accepting the check for deposit without further inquiry.

As in *Dominion Construction*, the embezzler here led the Bank's employees to believe that he was doing business as the plaintiffs, both by the nature of his signature card and his oral representation at the time of opening the account. We are not prepared to say, especially in view of the Bank's affidavits on the subject, that as a matter of law, the Bank, under these circumstances, acted contrary to reasonable commercial standards. The most we are prepared to say is that a factual issue on this subject has been raised.

The Bank urges that since the plaintiffs presented no evidence on the issue of commercial reasonableness, and since it has no funds in its possession belonging to Waghorn, it is entitled to judgment under A.R.S. § 44–2556(C). [U.C.C. § 3–419(3)]. As we previously indicated in footnote 1 to this opinion, we are not completely convinced that the defense provided under A.R.S. § 44–2556(C), is available to the Bank under the circumstances presented here, although we decline to rule specifically on this issue. More importantly, we note that the signature card filled out by Waghorn did not list the plaintiff Stahl Trucking as one of his "doing business as" designations. Moreover, the Bank's own policy involving rubber stamp endorsements may raise issues of fact. These issues raise sufficient questions in the court's mind so as to preclude us from saying, as a matter of law, that the Bank's acts were commensurate with reasonable commercial standards. Moreover, the question of the plaintiffs' actual negligence in this transaction (as

compared to our presumption of negligence because of the summary judgment posture of this appeal) is likewise a fact issue. We prefer that this entire question be presented to a trier of fact after a full evidentiary hearing.

## OUTGOING CHECKS

The outgoing checks (those that the plaintiffs signed to pay fictitious debts) present different considerations. First, the Bank contends that the plaintiffs have no direct legal action against it under the theory of breach of warranty, as such a warranty only runs to a "holder," and the plaintiffs do not qualify under that status. Of course, the plaintiffs contend they are, under the Code, "holders."

As interesting[4] as these contentions might be, we do not need to reach them, as we find, under the undisputed facts, that the Bank has a complete defense to an action based on the outgoing checks under the padded payroll rule embraced under A.R.S. § 44–2542(A)(3). [U.C.C. § 3–405(1)(c)]. This statute provides:

"A. An indorsement by any person in the name of a named payee is effective if:

\*   \*   \*   \*   \*   \*

"3. An agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

The official comments to this section of the Uniform Commercial Code state:

"It [U.C.C. § 3–405(1)(c); A.R.S. § 44–2542(A)(3)] extends the rule of the original Subsection 9(3) to include the padded payroll cases, where the drawer's agent or employee prepares the check for signature or otherwise furnishes the signing officer with the name of the payee. The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance . . . ." 2 Uniform Laws Annotated, at 338 (1977).

█ It is clear that this section of the Uniform Commercial Code is not limited merely to the "padded payroll" situation, but covers situations "in which an employee starts the wheels of normal business procedure in motion to produce a check for a non-authorized transaction." *New Amsterdam Casualty Co. v. First Pennsylvania Banking and Trust Co.,* 451 F.2d 892, 897 (3d Cir. 1971). The effect of this statute is that the instrument passes as though there had been no forgery and as between a collecting bank and the drawer of the check, the loss must fall on the drawer employer. *See General Accident Fire & Life Assurance Corp. v. Citizens Fidelity Bank and Trust Co.,* 519 S.W.2d 817 (Ky.1975).

█ We do not deem the Bank's admission that the endorsements on the outgoing checks were forgeries to be legally controlling. As a matter of fact, they were forged. However, from a legal standpoint, there is no doubt that these outgoing checks fall squarely within the provisions of A.R.S. § 44–2542(A)(3), and thus the fact of a forged endorsement becomes immaterial. Waghorn, an employee of plaintiffs, presented to plaintiffs as drawers of the checks, checks payable to payees who were allegedly creditors of plaintiffs, but in fact were not. Waghorn, at the time of presentation knew the payees were not creditors (their claims having previously been paid) and thus as a matter of law, intended that such payees have no interest in the checks. Waghorn then exactly forged the endorsements of the named payees and deposited those checks to his account at the Bank.

Under A.R.S. § 44–2542(A)(3), Waghorn's endorsement was effective and no liability ensues to the collecting bank for handling these "effective" endorsement checks.

4. *Compare Jett v. Lewis State Bank,* 277 So.2d 37, (Fla.App.1973) *with Sun 'N Sand, Inc. v.* *United California Bank,* 21 Cal.3d 671, 148 Cal. Rptr. 329, 582 P.2d 920 (1978).

Based on the foregoing, the judgment in plaintiffs' favor on Count One of this complaint (the incoming checks) is reversed and the matter remanded for further proceedings. The judgment in plaintiffs' favor in Count Two of the complaint (the outgoing checks) is reversed and the matter remanded with directions to enter judgment in favor of the Bank on this count.

SCHROEDER, P. J., and OGG, C. J., concur.