The plaintiffs, C N Contractors, Inc., and Alabama Siding Construction Company, appeal from a summary judgment in favor of the defendant Community Bancshares, Inc., d/b/a Community Bank ("Community Bancshares"). C N and Alabama Siding (sometimes herein "the plaintiffs") brought this action for damages against Community Bancshares, Mary Bivens, and sundry fictitiously named defendants, alleging conversion, negligence, and wantonness, all in connection with the action of Community Bancshares in cashing, or accepting for deposit, payroll checks on which Bivens forged the indorsements of the payees. The issues are (1) Whether in an action by two drawers, C N and Alabama Siding, against a depositary bank, Community Bancshares, a genuine issue of fact exists as to whether the bank converted numerous payroll checks that it cashed or accepted for deposit, after an employee of C N and Alabama Siding forged the indorsements of the payees, and (2) Whether § 7-3-405(1)(c), Ala. Code 1975, displaced the common law claims of negligence and wantonness by C N and Alabama Siding against Community Bancshares.
C N and Alabama Siding are construction and general contracting companies. They share the same office in Gardendale, Alabama. In 1988, Bivens was an employee of both corporations and performed various administrative duties for them.
C N and Alabama Siding perform construction work at job sites throughout the southeastern United States. On Wednesday morning of each week, the foreman at each job site telephoned Bivens and gave her the names of the employees working on the job site and the number of hours they had worked. Bivens then conveyed this information to Automatic Data Processing ("ADP"), whose offices were in Atlanta, Georgia. Under a contract with C N and Alabama Siding, ADP prepared payroll checks for the two companies. After preparing the payroll checks, based on the information given to it by Bivens, ADP sent the checks to the offices of C N and Alabama Siding in Gardendale for authorized signatures. Bivens was not an *Page 1359 
authorized signatory. After the checks were signed, Bivens sent the checks to the job site foreman for delivery to the employees.
In 1991, Bivens began conveying false information to ADP about employees and hours worked. On the basis of this false information, ADP prepared payroll checks payable to persons who were actual employees but had not worked the hours Bivens had indicated. After obtaining authorized signatures from officers of C N and Alabama Siding, Bivens intercepted the checks, forged the indorsement of the payees, and either cashed the checks at Community Bancshares or deposited them into her checking account at Community Bancshares, often presenting numerous checks at one time. Bivens continued this practice for almost a year, forging over 100 indorsements, until Jimmy Nation, vice president of C N, discovered the embezzlement after noticing payroll checks payable to employees who had not recently performed services for the corporations. Bivens later admitted to forging the indorsements.
With regard to the claim of conversion, the circuit court, in its summary judgment, held that under the "padded payroll" rule of § 7-3-405(1)(c), Ala. Code 1975,[1] the forged indorsement of Bivens was effective and that, therefore, the loss caused by the forged indorsements fell on C N and Alabama Siding. Relying on Continental Bank v. Wa-Ho Truck Brokerage, 122 Ariz. 414,595 P.2d 206 (Ariz.Ct.App. 1979), the circuit court also held that § 7-3-405(1)(c) displaced any common-law claim of negligence that the plaintiffs might otherwise have against Community Bancshares. Although it did not so state in its summary judgment, the circuit court presumably reached the same conclusion with regard to the claim of wantonness.
Assuming, without deciding, that either a statutory or a common law cause of action for conversion exists in the circumstances of this case,[2] we conclude that § 7-3-405(1) is dispositive of the conversion claim. Section 7-3-405(1)(c) provides in pertinent part:
 "(1) An indorsement by any person in the name of a named payee is effective if:
". . . .
 "(c) An agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no [interest in the instrument]."
A forged indorsement is ordinarily ineffective to pass title to an instrument to a collecting bank,[3] § 7-3-404(1), Ala. Code 1975 ("Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it"); § 7-1-201(43), Ala. Code 1975 ("unauthorized signature" includes a forgery); Peerless Ins.Co. v. Texas Commerce Bank — New Braunfels, N.A.,791 F.2d 1177 (5th Cir. 1986); Western Casualty Sur. Co. v. CitizensBank, 676 F.2d 1344, 1345 (10th Cir. 1982); see Brighton, Inc.v. Colonial First Nat'l Bank, 176 N.J. Super. 101, 422 A.2d 433
(1980), affm'd 86 N.J. 259, 430 A.2d 902 (N.J. 1981); Fidelity Cas. Co. v. First City Bank of Dallas, 675 S.W.2d 316, 317
(Tex.App. 1984), or, generally, to authorize a drawee bank to pay the instrument, § 7-4-401(1), Ala. Code 1975; Western Cas. Sur. Co., 676 F.2d at 1345; Shearson Lehman Bros, Inc. v.Wasatch Bank, 788 F. Supp. 1184, 1189 (D.Utah 1992). Seegenerally 1 James J. White Robert S. Summers, UniformCommercial Code, §§ 15-3, at 751 and 16-4, at 793 (3d ed. 1988). Section 7-3-405(1) creates a limited exception to these general rules. *Page 1360 
Although § 7-3-405(1) does not explicitly impose liability on the drawer for the loss caused by the payment of a forged instrument, it has the general legal effect of shifting liability to the drawer from the party who took from the forger. Comment 4, § 7-3-405, Ala. Code 1975. By making effective an otherwise ineffective indorsement in the special circumstances provided in § 7-3-405(1)(a), (b), and (c), §7-3-405(1) generally precludes the liability of a drawee bank to a drawer under § 7-4-401 and the liability of a collecting bank to a drawee/payor bank under § 7-4-207. E.g., ClintonWeilbacher Builder, Inc. v. Kirby State Bank, 643 S.W.2d 473,476 (Tex.App. 1982).
Under § 7-4-207, each party who obtains payment from the drawee and each prior transferor of a check warrants to the party who pays the check that he has good title to the instrument.[4] This warranty is breached when the check has a forged or unauthorized signature. If in good faith and in accordance with commercially reasonable standards, a depositary or collecting bank accepts a check with a forged indorsement and then presents it for payment to the drawee/payor bank and if the drawee/payor bank pays the check, the drawee/payor bank is generally liable to the drawer under § 7-4-401 because it did not properly pay the check to the drawer's order.[5] After recrediting the drawer's account, the drawee/payor bank may seek indemnification by proceeding against the collecting bank that made presentment under § 7-4-207, alleging breach of warranty of good title. Liability on the basis of breach of warranty travels backward through the chain of collection and is ultimately placed on the party who took the check from the forger. Western Cas. Sur. Co. v. Citizens Bank,676 F.2d 1344, 1345 (10th Cir. 1982) ("Ultimately the loss is generally borne by the person who forged the indorsement or the party who took the instrument from the forger"); Dominion Bank, N.A. v.Household Bank, F.S.B., 827 F. Supp. 463 (S.D. Ohio 1993);Shearson Lehman Bros., Inc. v. Wasatch Bank, 788 F. Supp. 1184,1189 (D.Utah 1992); McCarthy, Kenney, Reidy, P.C. v. FirstNat'l Bank, 402 Mass. 630, 524 N.E.2d 390, 392 (1988);Kraftsman Container Corp. v. United Counties Trust Co.,169 N.J. Super. 488, 404 A.2d 1288, 1291 (1979); Fidelity Casualty Co. v. First City Bank, 675 S.W.2d 316, 317
(Tex.App. 1984). Thus, when a depositary bank accepts a forged instrument, it is generally liable for the amount of the check paid by the payor. The rationale for this system of allocating liability is that the party who took from the forger should be liable for the loss because that party is in the best position to prevent such fraud by checking the authenticity of indorsements. E.g., E.S.P., Inc. v. Midway Nat'l Bank of St.Paul, 447 N.W.2d 882 (Minn. 1989); Stapleton v. First SecurityBank, 207 Mont. 248, 675 P.2d 83, 86 (1983), appeal afterremand on other grounds, 219 Mont. 323, 711 P.2d 1364 (1985).
Section 7-3-405(1) is a narrow exception to this general system of allocating loss. Because this section makes an indorsement on a forged signature effective, the drawee/payor bank is authorized to pay the instrument and is generally not liable, therefore, to the drawer under § 7-4-401. Further, because this section makes an indorsement on a forged signature effective, title to the instrument passes, as though there had been no forgery, and a collecting bank is entitled to payment from parties liable on the instrument. Western Cas. Sur. Co.v. Citizens Bank, 676 F.2d 1344 (10th Cir. 1982); GeneralAccident Fire Life Assurance Corp. v. Citizens Fidelity Bank Trust Co., 519 S.W.2d 817 (Ky. 1975); Continental Bank v.Wa-Ho Truck Brokerage, 122 Ariz. 414, 595 P.2d 206, 213 (Ariz.App. 1979). Thus, no conversion action by the drawer against either the drawee or the depositary bank will *Page 1361 
lie where § 7-3-405(1)(c) controls. The official comment to §7-3-405 states the rationale for allocating liability to the drawer in the circumstances covered by § 7-3-405(1):
 "The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee."
Paragraph 4 of the Official Comment to § 7-3-405, Ala. Code 1975. While a bank's assertion of this defense is subject to the UCC's general obligation of good faith, § 7-1-203, Ala. Code 1975, there is no allegation or other indication in the facts that Community Bancshares failed to act with "honesty in fact" in the transactions concerned. Ala. Code 1975, § 7-1-201(19);see British Caledonian Airways, Ltd. v. First State Bank,819 F.2d 593 (5th Cir. 1987) (holding that, under Texas law, a bank's negligence or failure to follow reasonable commercial practices did not constitute lack of good faith).
The circuit court held, and Community Bancshares argues, that under § 7-3-405(1)(c) Community Bancshares is not liable in the circumstances of this case because Bivens, an employee of C N and Alabama Siding, supplied her employers with the names of the payees of the payroll checks with the intent that the payees would take no interest in them. Community Bancshares argues that this is a "padded payroll" case and that by virtue of § 7-3-405(1)(c), the loss falls on the drawers of the checks, C N and Alabama Siding. C N and Alabama Siding contend that notwithstanding § 7-3-405(1)(c), a question of fact exists as to whether Community Bancshares was a holder in due course.
C N and Alabama Siding contend that Community Bancshares must establish its status as a holder in due course,see §§ 7-3-302 through -307, Ala. Code 1975, to assert the defense of the "padded payroll" rule. The plaintiffs cite no authority for this position but extrapolate it from various sections of Alabama's UCC. The argument seems to be predicated upon the language of § 7-3-306, which states that "[u]nless he has the rights of a holder in due course, any person takes the instrument subject to . . . [a]ll valid claims to it on the part of any person." As noted above, but for the applicability of the "padded payroll" rule, the plaintiffs would have a valid claim against their drawee bank who, in turn, would have a valid claim against Community Bancshares. The "padded payroll" rule, however, is a specific provision that acts on these facts independently of the holder-in-due course doctrine. Thus, the plaintiffs' claims are no longer valid, because the "padded payroll" rule operates to make the forged indorsements effective and places the loss on the plaintiffs.
We conclude that the circuit court correctly held that, because there is no genuine issue of material fact regarding the application of § 7-3-405(1)(c) in the circumstances of this case, an action for conversion will not lie and the question of whether Community Bancshares is a holder in due course does not arise. The summary judgment was, therefore, proper on the conversion claim.
The second issue argued by C N and Alabama Siding is whether § 7-3-405(1)(c) displaces their common law claims of negligence and wantonness against Community Bancshares. Community Bancshares answered the original count alleging negligence and wantonness by asserting that the plaintiffs had failed to state a claim and were barred by the UCC "fictitious payee" rules of § 7-3-405(1). Community Bancshares' subsequent motion for summary judgment argued that the "padded payroll" rule, Ala. Code 1975, § 7-3-405(1)(c), completely displaced the plaintiffs' claims. Community Bancshares also cited an Arizona case holding that the UCC "padded payroll" rule provides a complete defense to actions against a depositary bank for accepting checks containing indorsements forged by a corporate bookkeeper. See Continental Bank v. Wa-Ho Truck Brokerage, supra. Thus, to avoid a summary judgment, the plaintiffs had to *Page 1362 
establish that the count alleging negligence or wantonness was not displaced by the "padded payroll" rule.
C N and Alabama Siding's opposition to the motion for summary judgment asserted that there was a material issue of fact as to whether Community Bancshares had acted in a commercially reasonable manner in accepting the checks from Bivens. The plaintiffs also argued that Community Bancshares was not entitled to a judgment as a matter of law, citingAl Sarena Mines, Inc. v. SouthTrust Bank of Mobile,548 So.2d 1356 (Ala. 1989), and Southern Guar. Ins. Co. v. First AlabamaBank, 540 So.2d 732 (Ala. 1989). Community Bancshares replied to the plaintiffs' arguments by distinguishing those cases and reasserting that § 7-3-405(1)(c) clearly controlled the issue. Noting that there was no controlling authority on the issue in Alabama and relying, therefore, on the Arizona Continental Bank
case, the circuit court in its summary judgment held that §7-3-405(1)(c) displaced the common law claims of negligence and wantonness alleged by the plaintiffs.
Even viewing the evidence in a light most favorable to the plaintiffs, it appears that the defendants are entitled to a judgment as a matter of law; section 7-3-405(1) appears to displace the plaintiffs' action for common law negligence or wantonness, and the plaintiffs have cited no authority to establish that it does not displace their claims. Ala.R.Civ.P. 56(c). Under § 7-1-103, Ala. Code 1975, principles of law and equity supplement the provisions of the UCC, unless displaced by particular provisions of the Code. We agree with Community Bancshares that the cases cited by the plaintiffs do not establish that a common law claim for negligence or wantonness by a drawer against a depositary bank, as in the circumstances of this case, is not displaced by the "padded payroll" provision of Alabama's UCC. Al Sarena Mines pertains to "the liability of a depositary bank for accepting, over a forged indorsement, a check payable to a corporate payee for deposit into an individual's account, without inquiring as to the authority and reason for such a deposit." 548 So.2d at 1357 (emphasis added). Southern Guaranty Insurance discussed "whether a drawee bank is liable to a customer, despite that customer's negligence, when the drawee fails to exercise ordinary care in making payment on forged checks." 540 So.2d at 734 (emphasis added). Neither case addresses § 7-3-405.
C N and Alabama Siding assert that the language of another provision of Alabama's UCC implies that a common law action for negligence or wantonness may be maintained. They rely upon § 7-3-418, which controls the finality of payment or acceptance. Section 7-3-418 provides:
 "Except for recovery of bank payments as provided in the article on bank deposits and collections (Article 4) and except for liability for breach of warranty on presentment under Section 7-3-417, payment or acceptance of any instrument is final in favor of a holder in due course or a person who has in good faith changed his position in reliance on the payment."
(Emphasis added.) C N and Alabama Siding also rely on paragraph 4 of the Official Comment to § 7-3-418:
 "The section rejects decisions under the original Act permitting recovery on the basis of mere negligence of the holder in taking the instrument. If such negligence amounts to a lack of good faith as defined in this Act (Section 7-1-201) or to notice under the rules (Section 7-3-304) relating to notice to a purchaser of an instrument, the holder is not a holder in due course and is not protected; but otherwise the holder's negligence does not affect the finality of the payment or acceptance."
(Emphasis added by the plaintiffs.)
We conclude that it is unnecessary to decide generally whether § 7-3-405(1)(c) displaces any common law claims of negligence and wantonness, which, the plaintiffs allege, they may assert as drawers against a depositary or collecting bank in the circumstances of this case. The plaintiffs have presented this Court with no authority to support their contention that they may maintain a common law action alleging either negligence or wantonness against Community Bancshares in the circumstances of this case. The pertinence of the plaintiffs' argument as to § 7-3-418 and its accompanying comment is that *Page 1363 
the negligence of a holder is relevant in determining theissue of whether the holder who accepted an instrument did so not in good faith or did so with notice, so that it therefore is not a holder in due course, which issue may arise in the context of final payment or acceptance, as governed by §7-3-418. We find that, standing alone, the general language of a comment to a provision controlling finality of payment or acceptance is too far removed to be helpful in deciding the question whether common law actions for negligence or wantonness are preserved despite the particularities of Alabama's "padded payroll" rule. Saying that issues of negligence or wantonness are relevant to determining whether a holder bank is a holder in due course for purposes of § 7-3-418
does not establish that a drawer has a common law cause of action for negligence and wantonness against a depositary bank in the circumstances of this case. Thus, the plaintiffs' citation to § 7-3-418 does not help establish that a negligence claim will lie here in spite of § 7-3-405(1)(c). There being no other substantive arguments to support the viability of such a claim, we are not presented with any basis on which to hold that the circuit court erred in entering the summary judgment on the plaintiffs' claims of negligence and wantonness.
For the foregoing reasons, we affirm the summary judgment in favor of the defendant Community Bancshares on the plaintiffs' claims of conversion, negligence, and wantonness.
AFFIRMED.
SHORES, HOUSTON, KENNEDY and COOK, JJ., concur.
STEAGALL, J., concurs in the result.
[1] Section 7-3-405(1) is often refereed to generally as the "imposter" rule or the "fictitious payee" rule. Section7-3-405(1)(c) is often referred to more specifically as the "padded payroll" rule.
[2] The statutory basis for a conversion claim would appear to be § 7-3-419(1)(c), Ala. Code 1975. We have held, however, that a depositary bank does not "pay" an instrument on a forged indorsement within the meaning of that section. Al SarenaMines, Inc. v. SouthTrust Bank, 548 So.2d 1356 (Ala. 1989). A common law claim of conversion may be preserved as a supplementary principle of law under § 7-1-103. See id., 548 So.2d at 1358 (recognizing a common law claim of conversion by a payee of a check against a depositary bank). The parties have neither raised nor argued this issue.
[3] An unauthorized signature, however, operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value. § 7-3-404, Ala. Code 1975.
[4] A warranty of good title under § 7-4-207 is an implied contractual warranty that the indorsements on a check are valid. Trust Co. Bank v. State, 420 So.2d 10 (Ala. 1982).
[5] The liability of the drawee/payor bank is qualified by certain duties of care owed by the drawer in detecting unauthorized signatures or other alterations to the instrument and by certain provisions limiting the period within which the drawer may hold the drawee liable for paying the forged instrument. §7-4-406, Ala. Code 1975.