OPINION OF THE COURT
Louis Grossman, J.
This is a motion by defendant Citibank, N. A., sued herein as "First National City Bank” (Citibank) for summary judgment under CPLR 3212 dismissing this action as against defendant Morgan Guaranty Trust Company (Morgan), and a cross motion by plaintiff Danje Fabrics Division of Kingspoint International Corp. (Danje) for summary judgment against defendant Morgan.
The facts in this case are essentially undisputed by the parties. In November, 1974, plaintiff Danje, a family-owned company that converted yarn into fabric, hired one Raymond Caulder (Caulder) as its accounts payable bookkeeper. Specialty Dyers (Dyers) located in North Carolina, is in the business of dying fabrics, a service which Dyers has performed for Danje for several years and for which Danje has paid Dyers regularly, amounting to millions of dollars.
Dyers would submit invoices to Danje to secure payment for the services it had performed. These invoices were first reviewed in Danje’s production department. The invoices would then be sent to Caulder who would record them in the accounts payable ledger and file the invoices by due date. When the due date came, Caulder, at times with the help of another employee, would manually prepare the necessary checks and write in the name of the payee. The checks were then submitted by Caulder to Ernest J. Michel (Michel), president of Danje, or to his son Stanley, for signature. Along with the checks given to Ernest or Stanley Michel for signature, the original invoices supporting each check and adding machine tapes of the invoices, if more than one, were submitted to the signatory.
On May 28, 1975, Caulder’s employment was terminated by Danje for appearing for work drunk, unshaven and unruly. Shortly thereafter, it was discovered that between April 23, 1975 and May 21, 1975, Caulder had taken 27 checks totaling *748 $49,645.82, made out to Dyers in payment of bona fide invoices for services actually performed and for which payments were actually due, after they had been signed, and diverted them into an account he or he and an accomplice had opened at Citibank in the name of Specialty Dyers. A private investigator hired by Danje to locate Caulder and obtain the return of the proceeds of the diverted checks reported to Danje that Caulder’s true name was Raymond Fíate. Caulder has not been found, nor has the money been retrieved. There is presently a balance of $6,435.29 in the Specialty Dyers account opened by Caulder at Citibank.
Thereafter, Danje commenced this action against Morgan as the payor or drawee bank and against Citibank as the collecting bank. Danje’s complaint set forth three causes of action. The first was against defendant Morgan only for wrongfully debiting plaintiffs account for the 27 checks which plaintiff alleged contained forged payee’s indorsements. The second and third causes of action were against defendant Citibank only and alleged negligence on its part in permitting a fraudulent account to be opened by the forger. Citibank moved to dismiss the complaint as to itself for failure to state a cause of action, which was granted. The order dismissing the complaint as to Citibank was served with notice of entry. No appeal was ever taken from the said order and the time for plaintiff to appeal has expired. Thus, the only cause of action remaining is the one against Morgan as drawee bank. However, Citibank is still in the action since Morgan has cross-claimed against Citibank on its prior indorsements as the collecting bank. Citibank recognizes and concedes that if plaintiff has judgment against Morgan, then Morgan is entitled to judgment over against Citibank in like amount and has therefore brought this motion in which Morgan has joined.
 Citibank contends that Morgan has a complete defense to the claim set forth by Danje in its complaint by reason of the provisions of section 3-405 of the Uniform Commercial Code. This section provides in pertinent part:
"§ 3-405. Imposters; Signature in Name of Payee
"(1) An endorsement by any person in the name of a named payee is effective if * * *
"(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.”
Since it was Caulder who was responsible for the preparation *749 of checks based upon invoices given to him by plaintiff Danje’s production department and who presented such checks to the individual who was authorized to sign them, Citibank argues, and Morgan agrees, that, based upon the facts as herein set forth, Caulder “supplied” the plaintiff with the name of the payee intending the latter to have no such interest and therefore the indorsements in question are effective. Danje’s position is that, since the 27 checks in question were prepared as a result of bona fide business transactions between Dyers, the named payee, and Danje, Caulder did not “supply” plaintiff with the name of the payee but simply converted the checks to his own use, and that therefore section 3-405 (subd [1], par [c]) of the Uniform Commercial Code has no application to the instant case.
Therefore, the issue to be decided in this case is what scope the word "supplied”, as used in section 3-405 (subd [1], par [c]) of the Uniform Commercial Code was intended to have. Was it the Legislature’s intent for it to cover all instances where an employee presents an instrument to the maker for signature or must a line be drawn to distinguish between those instances where the instrument is based upon a fraudulent transaction and those where the instrument is based upon a bona fide transaction occurring in the regular course of business.
There are extremely few cases in any jurisdiction dealing with section 3-405 (subd [1], par [c]) of the Uniform Commercial Code and the court has found only three cases which bear any relation to the specific question raised herein. One is a New York case, Board of Higher Educ. v Bankers Trust Co. (86 Misc 2d 560), factually similar to the present case, which discusses the point in question but does not go into it in detail since the defendant did not seriously contest the applicability of the over-all section. Another is a New Jersey case, Snug Harbor Realty Co. v First Nat. Bank (105 NJ Super 572, 581, affd 54 NJ 95) which presents a very similar fact pattern to the instant case and deals directly with the point in question. The third is a Federal Court of Appeals case in the Third Circuit applying Pennsylvania law, New Amsterdam Cas. Co. v First Pa. Banking & Trust Co. (451 F2d 892) which also presents similar facts with one distinction upon which the court rests its decision, and which sets forth a definition of the word “supplied” as used in section 3-405 (subd [1], par [c]) of the Uniform Commercial Code.
*750 The law as set forth in section 3-405 (subd [1], par [c]) of the Uniform Commercial Code reads exactly the same in all of the three States in which the above-mentioned cases were decided. According to the official comment accompanying section 3-405 (subd [1], par [c]) of the Uniform Commercial Code as set forth in the official statutes of all three States. (Official Comment, McKinney’s Cons Laws of NY, Book 62 Vi, Uniform Commercial Code, § 3-405, p 257): "Paragraph (c) is new. It extends the rule of the original Subsection 9(3) to include the padded payroll cases, where the drawer’s agent or employee prepares the check for signature or otherwise furnishes the signing officer with the name of the payee. The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.” Although the official comment quoted above, makes mention only of "padded payroll” cases, it is clear that the provisions of the code extend beyond these to other "padded” cases where the operative facts are present, i.e., where the drawer’s agent or employee prepares the checks, presumably drawn for payroll or other valid purposes, for signature or otherwise furnishes the signing officer with the name of the payee.
The official comment also provides two examples which illustrate situations in which section 3-405 (subd [1], par [c]) of the Uniform Commercial Code is applicable. Both examples use a fact pattern where an employee of a corporation prepares a padded payroll for the treasurer. In one instance, the employee adds a fictitious payee to the payroll without the knowledge of the treasurer, while in the other, the payee exists and the employee knows it but adds a check to the payroll intending the payee to have no interest in it. In both instances, any person could effectively indorse the payee’s name and the loss would fall on the corporation rather than a subsequent holder or the drawee. The above illustrative situations are straightforward and clear. The problem with applying said illustrative situations to the instant case results from the fact that both of said situations are based on a payroll *751 where an unauthorized check in each case has been added to it rather than a totally legitimate check. While it is clear that section 3-405 (subd [1], par [c]) of the Uniform Commercial Code applies to fraudulent checks, its application to a situation involving bona fide checks is not discussed in those examples.
In our present case, the checks stolen by Caulder were legitimate and bona fide payments due and owing to Dyers. The checks themselves involved in our case were not fraudulent in any respect and the facts herein indicate that proper and careful business procedures were followed in the drawing and making of said checks. The undisputed facts herein further show that it was only the criminal conduct of Caulder in appropriating, stealing and falsely indorsing said checks, which constituted legitimate payments to the named payee, that resulted in the loss herein incurred by Danje.
In Board of Higher Educ. v Bankers Trust Co., (86 Misc 2d 560, supra) an employee of the plaintiff had as her duty the responsibility of preparing requisitions for checks to be issued by plaintiff for scholarships and other payments to students, to prepare the checks, to have them signed by the authorized personnel, and to send the checks to their recipients. On a number of occasions, the employee prepared duplicate requisitions and checks, which she retained after they had been signed. Also, in some instances, she retained checks which had been properly requisitioned instead of sending them. She then forged the indorsements of the named payees on these checks and cashed them. In arguing that these checks should not be debited against its accounts, plaintiff did not seriously contest the applicability of section 3-405 (subd [1], par [c]) of the Uniform Commercial Code to the facts of the case, but argued that the banks were estopped from relying on its provisions because of their gross negligence in allowing the forger to cash the checks. As a result, the court simply stated its conclusion that the forged indorsements were effective, lumping all of the checks together without distinguishing between the duplicate and the genuine checks, and proceeded to discuss the merits of the other arguments which were the main thrust of plaintiff’s case.
In Snug Harbor Realty Co. v First Nat. Bank (105 NJ Super 572, affd 54 NJ 95, supra) plaintiff maintained a system under which parties asserting claims against it would submit invoices which were then given to its superintendent for verifi *752 cation. Upon verifying that the claims were valid, he would initial the invoices and forward them to the bookkeeper who would verify the contractual obligation and prepare the necessary checks. After the checks were signed by the company’s authorized official, the superintendent would pick them up for delivery to the respective payees. Instead of delivering the checks, he proceeded to forge the indorsements of the named payees and cash the checks for his own personal use. The trial court found that the provisions of section 3-405 (subd [1], par [c]) of the Uniform Commercial Code were "dispositive” and therefore the indorsements were effective and the bank not liable to the plaintiff. The appellate court reversed, stating: "[the] unfaithful employee of the construction company, did not supply to his employer 'the name of the payee intending the latter to have no such interest’. To the contrary, the payees were bona tide creditors of the company who had respectively submitted their invoices for work performed or materials furnished.” (Snug Harbor Realty Co. v First Nat. Bank, 105 NJ Super 572, 574, supra.) Therefore, the creditors themselves "supplied” the plaintiff with the names of the payees, and the employee, in essence, stole the checks, thereby making his forged indorsements ineffective.
This appellate court decision in the Snug Harbor case (supra) appears to be on all fours with our instant case. In both situations, we are dealing with legitimate payments which were misappropriated and stolen by an employee instead of having them delivered or sent to the intended payee.
In New Amsterdam Cas. Co. v First Pa. Banking & Trust Co. (451 F2d 892, supra) plaintiff was a stockbroker’s insurer who had paid losses sustained by the stockbroker whose employee had forged indorsements on its checks and whose account had been debited by the drawee bank. The employee had submitted fraudulent sell orders to the trading room of the broker, thereby initiating the normal business procedure involved in the sale of items from various client’s portfolios. The employee would then obtain the necessary confirmation slips, normally sent to the customer, by saying that he would deliver them personally. When the employee knew that the checks pursuant to the sale were ready, he would obtain them from the broker’s cashier, stating that the customer had authorized his receipt of the checks. Instead of delivering the checks to the customer, he would then forge the indorsements of the named payees and cash the checks. The court decided *753 that the indorsements were effective, relieving the drawee bank of liability. However, in explaining its decision, the court stated:
"In the interest of business and bank stability, it is important that a reasonably clear line be drawn. Our decision places the burden on the drawer who, in the words of the official comment, is 'in a better position to cover the loss by fidelity insurance * * U.C.C. § 3-405, comment 4” (supra, p 897).
"For the purpose of giving meaning to the word 'supplied’ in Section 3-405(l)(c), we can find no viable place to draw the line within the business enterprise of the drawer. Accordingly, in the context of the facts here, the only rational distinction lies between bona fide and fraudulent transactions because it is only in the case of a bona fide transaction that anyone other than the faithless employee may be said to have supplied the name of the payee to the company.” (Supra, p 898.) Thus, although the court decided that section 3-405 (subd [1], par [c]) of the Uniform Commercial Code was applicable to the facts of that case as presented to it, the court clearly stated that this was only because a fraudulent transaction had been involved. If a bona fide business transaction had been the basis for the issuance of the checks in question, the court indicated that it would have found differently.
This court believes that if the plaintiff in Board of Higher Educ. v Bankers Trust Co. (86 Misc 2d 560, supra) had seriously contested the applicability of section 3-405 (subd [1], par [c]) of the Uniform Commercial Code to the facts of that case, the New York court would have been forced to distinguish between the genuine checks retained by the employee and the duplicate checks which she caused to be issued.
In our instant case, the checks involved were based upon bona fide transactions and obligations of the plaintiff which arose out of the normal business relationship with the payee named on said checks. In such instance, it cannot be claimed that the employee, Caulder, supplied his employer, Danje, with the name of the payee, Dyers, as said checks were legitimately based upon open invoices due and owing to the payee, Dyers.
Accordingly, on the basis of the fact pattern existing in our instant case considered along with the cases herein discussed and the manner in which those respective courts arrived at their conclusions, defendant’s motion for summary judgment *754 is denied and plaintiffs cross motion for summary judgment against defendant, Morgan, is granted.
Morgan’s cross claim against Citibank based upon Citibank’s prior indorsements, as the collecting bank, of the checks in question and Citibank’s admitted liability under its warranties as set forth in section 4-207 of the Uniform Commercial Code is also granted.