**FIDELITY & CASUALTY COMPANY,**
Appellant,

v.

**FIRST CITY BANK OF DALLAS,**
Appellee.

No. 05–83–00286–CV.

Court of Appeals of Texas,
Dallas.

July 23, 1984.

Rehearing Denied Sept. 5, 1984.

Roger A. Hanson, Gary W. Maxfield, Dallas, for appellant.

Stephen L. Baskind, James A. Knox, Vial, Hamilton, Koch, Tubb, Knox, Spradley, Dallas, for appellee.

Before AKIN, SPARLING and SHUMPERT, JJ.

SPARLING, Justice.

This is an appeal from a take-nothing summary judgment in a suit in which Fidelity & Casualty Company of New York, as subrogee of First National Bank of Dallas, sought reimbursement from appellee, First City Bank of Dallas, of $903,300.00 paid on eighteen forged checks. Fidelity claims that the summary judgment evidence did not establish that First City was entitled to judgment as a matter of law. We hold that TEX.BUS. & COM.CODE §§ 3.405(a)(3) and 3.418 (Vernon 1968), as applied to the summary judgment evidence, allocate the loss to Fidelity as a matter of law and, accordingly, affirm.[1]

First National's factoring department purchased the accounts receivable of Rock Island Bedding Company and Berry Industries, Inc., and periodically issued each company checks for money collected. Johnny Johns, a First National employee, submitted check request forms, purportedly on behalf of Rock Island and Berry, to First National's accounting department. The department issued cashier's checks, payable to Rock Island and Berry. Johns intercepted the checks, forged the endorsements, and deposited them at First City. First City accepted the checks, endorsed

them "P.E.G." (prior endorsements guaranteed), and presented them to First National for payment. First National paid the checks and recovered the amounts from Fidelity, its bond insurer. Fidelity, having suffered the loss, sued First City for breach of contract, misrepresentation, breach of warranty of title, negligence, gross negligence, money had and received, and conversion and, additionally, alleged bad faith and commercial unreasonableness. We hold that § 3.405(a)(3), the "Fictitious Payee Rule," and § 3.418, the "Final Payment Rule," as a matter of law preclude First City's liability.

### Commercial Code Cause of Action

As a general rule, forged endorsements are ineffective to pass title or to authorize payment. J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 16–8 (2d ed. 1980). *See* § 3.417, Comment 3 (Vernon 1968).[2] As Section 3.404(a) provides, "Any unauthorized signature is wholly inoperative as that of the person whose name is signed. . . ." Thus, First City, as the collecting bank, warranted to First National, the payor bank, that it "ha[d] a good title to the item or [was] authorized to obtain payment or acceptance on behalf of one who ha[d] a good title." § 4.207(a)(1). Since the endorsement of the payee was not genuine or authorized, the collecting bank, First City, ordinarily would be liable to the payor bank, First National, for breach of warranty. *Western Casualty & Surety Co. v. Citizens Bank of Las Cruces*, 676 F.2d 1344, 1345 (10th Cir.1982). There is an exception to this general rule. Section 3.405(a)(3) provides:

(a) An indorsement by any person in the name of a named payee is effective if:

(3) an agent or employee of the maker or drawer has supplied him with the

---

**1.** All citations herein are to sections of the TEX. BUS. & COM.CODE (Vernon 1968).

**2.** The generally accepted rule is that "the party who accepts or pays does not 'admit' the genu-

ineness of endorsements, and may recover from the person presenting the instruments when they turn out to be forged."

name of the payee intending the latter to have no such interest.

The general purpose of the Code is to allocate the loss, among innocent parties, to the person who is closest to the individual causing the loss and who, presumably, has the best opportunity to prevent it. *See W.R. Grimshaw Co. v. First National Bank & Trust Co. of Tulsa,* 563 P.2d 117, 121 (Okla.1977). Thus, § 3.405 allocates the loss to the employer of the faithless employee:

> The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.

§ 3.405, Comment 4. *See Clinton Weilbacher Builder v. Kirby State Bank,* 643 S.W.2d 473, 476 (Tex.App.—San Antonio 1982, no writ); *Fair Park National Bank v. Southwestern Investment Co.,* 541 S.W.2d 266, 267 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). The effect of the section is to render a forged endorsement effective to transfer title. By shifting the loss to the drawer, the section precludes a collecting bank's liability on a § 4.207(a)(1) warranty and a drawee's liability to its customer under § 4.401.[3] *New Amsterdam Casualty Co. v. First Pennsylvania Bank & Trust Co.,* 451 F.2d 892 (3d Cir. 1971); *Clinton Weilbacher,* 643 S.W.2d at 476; *Braswell Motor Freight Lines, Inc. v. Bank of Salt Lake,* 28 Utah 2d 347, 502 P.2d 560, 561 (1972). Since First National was both drawer and payor, § 3.405(a)(3) provides First City a defense to Fidelity's cause of action.

■ We hold that the summary judgment evidence established as a matter of law the applicability of § 3.405(a)(3). An employee "supplies" the name of the payee if he "starts the wheels of normal business procedure in motion to produce a check for a nonauthorized transaction." *Continental Bank v. Wa–Ho Truck Brokerage,* 122 Ariz. 414, 595 P.2d 206, 213 (Ariz.App. 1979), quoting *New Amsterdam,* 451 F.2d at 897. Johns testified by deposition that he created false balances in the customers' accounts by submitting false invoices and, further, that the customers were not entitled to the funds represented by the eighteen checks. The checks would not have been issued but for Johns' deceit. Thus, Johns clearly "supplied" First National with the name of the payee.

■ Fidelity argues that § 3.405(a)(3) is inapplicable to the transactions because the payees were actual customers of First National. We disagree. "It is immaterial whether a person with the name of the payee actually exists or whether the name is in fact a wholly fictitious name." Bender's Uniform Commercial Code § 3.08[3] (1984). The controlling factor is whether the underlying transaction is bona fide. *New Amsterdam,* 451 F.2d at 898.

Although First National may have been indebted to the payees at the time the checks were drawn, the checks were issued only because of Johns' fraudulent actions;

---

**3.** (a) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft.

(b) A bank which in good faith makes payment to a holder may charge the indicated account of its customer according to

(1) the original tenor of his altered item; or

(2) the tenor of his completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper.

*See First State Bank v. Oak Cliff Savings & Loan Association,* 387 S.W.2d 369, 372 (Tex.1965) (bank which pays out money upon forged endorsement may not legally charge the amount so paid to depositor's account); *Greenville Avenue State Bank v. Lang,* 421 S.W.2d 748, 749 (Tex.Civ.App.—Dallas 1967, no writ) (bank must ascertain existence and identity of payee and must at its own peril determine genuineness of payee's endorsement before paying depositor's check).

thus, the transactions were not bona fide. In this respect, we distinguish *Danje Fabries Division v. Morgan Guaranty Trust*, 96 Misc.2d 746, 409 N.Y.S.2d 565 (N.Y.Sup. Ct.1978), and *Snug Harbor Realty Co. v. First National Bank of Toms River, New Jersey*, 105 N.J.Super. 572, 253 A.2d 581 (N.J.Super.Ct.App.Div.1977), in which the employees intercepted checks that represented "legitimate and bona fide payments due and owing." *Danje*, 409 N.Y.S.2d at 568.

Additionally, the evidence proves that Johns "intend[ed the payee] to have no ... interest" in the checks. § 3.405(a)(3). Although the actual existence of the payee is relevant to the issue of intent, § 3.405, Comment 1, Johns repeatedly testified by deposition that at the time he prepared the check request forms he intended the payees to receive no interest in the funds. *See Louisville Credit Men's Association v. Louisville Trust Co.*, 422 S.W.2d 421, 422 (Ky.1967). Fidelity offered no conflicting summary judgment evidence. Accordingly, we hold that First City proved, as a matter of law, the applicability of § 3.405(a)(3).

### Common Law Causes of Action

■ Fidelity also asserts causes of action based on conversion, negligence, and money had and received. We conclude that these claims are untenable under the Code. Section 3.418 provides that "payment or acceptance of any instrument is final in favor of a holder in due course." The section follows the rule of *Price v. Neal*, 3 Burr. 1354, 97 Eng.Reprint 871 (1762), and makes final the payment of a forged check by a drawee bank unless a presentment warranty has been breached. We have held that First City established as a matter of law that § 3.405(a)(3) precludes First National's 4.207(a)(1) breach of warranty claim. Thus, payment was final. Accordingly, we hold that § 3.418 precludes liability on the theories of negligence, conversion, and money had and received. *See* § 3.418 comment 4; *Bryan v. Citizens National Bank in Abilene*, 628 S.W.2d 761, 763–64 (Tex.1982); *Bankers Commercial*

*Life Insurance Co. v. Scott*, 631 S.W.2d 228 (Tex.App.—Tyler 1982, writ ref'd n.r. e.); *Fair Park*, 541 S.W.2d at 270; *Aetna Life & Casualty Co. v. Hampton State Bank*, 497 S.W.2d 80, 85 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). We need not address Fidelity's contention that First City acted with bad faith or without commercial reasonableness because Fidelity did not pursue these theories on appeal.

■ Finally, Fidelity contends that First City is liable for breach of contract. Fidelity relies on *First National Bank of Mineola v. Farmer's Merchant's State Bank of Athens*, 417 S.W.2d 317 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.), and *Agriculture Insurance Co. v. North Texas National Bank*, 57 S.W.2d 229 (Tex.Civ.App.—El Paso 1933, writ ref'd), for the proposition that by endorsing each check "P.E.G.," First City contractually warranted the genuineness of all prior endorsements. We disagree. Both cases were decided prior to the adoption of the Uniform Commercial Code in Texas. Under the Code, "supplementary general principles of law" apply only if not "displaced" by a particular provision of the Code. § 1.103. Section 4.207 "is intended to give the effect presently obtained in bank collections by the words 'prior endorsements guaranteed' in collection transfers and presentments between banks. The warranties and engagements arise automatically as part of the bank collection process." § 4.207 comment 2. Thus, under the Code, "P.E.G." is an express warranty of title. Although the parties may vary Code provisions by agreement, § 1.102(c), no summary judgment evidence exists that either bank intended "P.E.G." to constitute an independent, contractual guaranty. The use of the symbol does not reflect offer, acceptance, consideration, or any other element of a contract. We overrule Fidelity's point of error and affirm.