HARTFORD INSURANCE COMPANY OF THE MIDWEST, Appellant–Plaintiff,

v.

UNION FEDERAL SAVINGS BANK and INB National Bank, Appellees–Defendants.

No. 49A04–9404–CV–131.

Court of Appeals of Indiana, Fourth District.

Sept. 26, 1994.

Rehearing Denied Nov. 2, 1994.

Transfer Denied Feb. 24, 1995.

H. Andrew Sonneborn, Linder & Hollo-well, Indianapolis, for appellant.

Richard A. Rocap, Nancy G. Curless, Rocap Witchger & Threlkeld, Steven L. Yount, Indianapolis, for appellees.

CHEZEM, Presiding Judge.

*Case Summary*

Appellant-plaintiff, Hartford Insurance Company of the Midwest ("Hartford"), appeals the trial court's entry of summary judgment in favor of appellees-defendants Union Federal Savings Bank ("Union Federal") and INB National Bank ("INB"). We affirm.

*Issues*

Hartford presents two issues for review, consolidated and restated as: whether Ind. Code § 26-1-3-405 should apply to Union Federal and INB where the payees of the checks were bona fide creditors.

*Facts and Procedural History*

The facts in this case are undisputed. Kathy Rix was employed by Wells & Company ("Wells") as a business account representative. Rix was authorized to submit check requests to the accounting department for disbursement to clients. Rix would give the department the names of the payees on such checks, but was not required to submit any supporting documentation with the check requests. The accounting department would then cut the check and send it back to Rix for distribution to the payee. Between October 1, 1990, and January 18, 1991, Rix submitted 15 check requests to the accounting department for payment to existing clients of Wells. However, Rix did not intend for these payees to receive the proceeds of the checks. She forged the names of the payees, endorsed the checks payable to herself, and received the funds from the checks.

Hartford provided a fidelity bond to Wells during the period of Rix' employment. When Wells discovered the losses from Rix' activities, it made a claim against the fidelity bond. Hartford paid the claim and brought a conversion suit against Union Federal and INB, the banks that processed the checks. Union Federal and INB moved for summary judgment. After a hearing on the motion, the trial court granted summary judgment in

favor of Union Federal and INB. Hartford now appeals.

### Discussion and Decision

Hartford contends that Union Federal and INB were not entitled to summary judgment as a matter of law. When reviewing a trial court's entry of summary judgment, we are bound by the same standards as the trial court. We may only consider those portions of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters designated to the trial court by the parties for purposes of the summary judgment motion. *Rosi v. Business Furniture Corp.* (1993), Ind., 615 N.E.2d 431, 434; Ind. Trial Rule 56(C), (H). Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Ramon v. Glenroy Construction Co., Inc.* (1993), Ind.App., 609 N.E.2d 1123, 1127, *trans. denied.* The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and that the movant was entitled to summary judgment as a matter of law. *Rosi, supra,* at 434. All properly asserted facts and reasonable inferences to be drawn therefrom should be viewed in the light most favorable to the non-movant. *Ramon, supra,* at 1127.

The crux of Hartford's argument is that the trial court erred in relying on the "fictitious payee rule", Section 3–405 of the Uniform Commercial Code, in granting summary judgment for Union Federal and INB. The Indiana General Assembly codified Section 3–405 at Ind. Code § 26–1–3–405 [1], which provides, in pertinent part, that:

(1) An endorsement by any person in the name of a named payee is effective if ...

(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

Official Comment # 4 to the Code Section provides as follows:

Paragraph (c) is new. It extends the rule of the original Subsection 9(3) to include the padded payroll cases, where the drawer's agent or employee prepares the check for signature or otherwise furnishes the signing officer with the name of the payee. The principle followed is that the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are·that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee.

The provision applies only to the agent or employee of the drawer, and only to the agent or employee who supplies him with the name of the payee. The following situations illustrate its application:

a. An employee of a corporation prepares a padded payroll for its treasurer, which includes the name of P. P does not exist, and the employee knows it, but the treasurer does not. The treasurer draws the corporation's check payable to P.

b. The same facts as a, except that P exists and the employee knows it but intends him to have no interest in the check. In both cases an endorsement by any person in the name of P is effective and the loss falls on the corporation.

We find further explanation of § 3–405 in 1 J. White and R. Summers, *Uniform Commercial Code* § 16–4, at 795 (3rd ed. 1988). White and Summers state that "[s]ubsections (1)(b) and (1)(c) also expand some pre-Code doctrine by including as 'fictitious payees' those who are real persons yet not persons whom the thief intended to have an interest in the check. That is, a party who wishes to steal from his employer can draw a check payable to the order of some imaginary per-

---

1. Effective July 1, 1994, the legislature repealed I.C. § 26–1–3–405 and recodified it at I.C. §§ 26– 1–3.1–403, 404, and 405.

son (the arch-type fictitious payee) or he can draw a check payable to the order of a real person but never give the check to that person. Both types of payees are 'fictitious payees' under 3–405."

Hartford argues that I.C. 26–1–3–405 should not apply to Union Federal or INB because the payees of the checks were bona fide creditors. Hartford cites to *Snug Harbor Realty Co. v. First National Bank of Toms River, New Jersey* (1969) 105 N.J.Super. 572, 253 A.2d 581, and *Danje Fabrics Division of Kingspoint International Corp. v. Morgan Guaranty Trust Co.* (1978) 96 Misc.2d 746, 409 N.Y.S.2d 565, for the proposition that § 3–405 does not apply where the payees on the checks are bona fide creditors who have submitted invoices for work performed or materials furnished. Hartford does not cite to, nor could we find, any Indiana case law with a similar holding. Union Federal and INB argue that *Snug Harbor* and *Danje* are distinguishable from the present case because Hartford did not designate any evidence showing that the payees of the checks had submitted invoices, requested payment, or knew that any payment was due and owing from Wells. We agree.

I.C. § 26–1–3–405(1)(c) allocates that the loss should fall upon the employer in a situation where an employee provides the employer with the name of a real payee, intending that the payee not have an interest in the check. In *M & K Corporation v. Farmers State Bank* (1986), Ind.App., 496 N.E.2d 111, 115, *reh'g denied,* this court found the language of I.C. § 26–1–3–405 to be clear and straightforward, and declined to allocate losses contrary to the intent of the legislature. We agree that Subsection 405(1)(c) is clear that the employer should bear the loss in this situation because it is in a better position to prevent such a loss. The trial court properly found that I.C. § 26–1–3–405(1)(c) applied to this case and protected Union Federal and INB from liability for paying the checks. Summary judgment in favor of Union Federal and INB was properly entered.

Affirmed.

RILEY, J., concurs.

BARTEAU, J., dissents with opinion.

BARTEAU, Judge, Dissenting.

I dissent. The trial court improperly entered summary judgment in favor of Union Federal and INB because a genuine issue of material fact exists.

The general rule is that a bank which pays on a forged endorsement is liable for conversion. *See* Ind. Code 26–1–3–419 [repealed; see now I.C. 26–1–3–420]. By enacting Ind. Code 26–1–3–405(1)(c), the legislature created a defense to a conversion action when "an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest" in the instrument. The endorsement on such an instrument is deemed effective, i.e. not forged, as against the payor bank. Official comment 1 to this section states: "The words 'fictitious or nonexisting person' have been eliminated as misleading, since *the existence or nonexistence of the named payee is not decisive and is important only as it may bear on the intent that he shall have no interest in the instrument."* (Emphasis added).

In *Snug Harbor Realty Co. v. First National Bank of Toms River, New Jersey* (1969), 105 N.J.Super. 572, 253 A.2d 581 and *Danje Fabrics Division of Kingspoint International Corp. v. Morgan Guaranty Trust Co.* (1978), 96 Misc.2d 746, 409 N.Y.S.2d 565, the courts determined as a matter of law that UCC section 3–405(1)(c) did not apply because the payees were bona fide creditors. I do not agree that evidence that the payees were bona fide creditors makes 3–405(1)(c) inapplicable. I believe that evidence that the payees were bona fide creditors, like the existence or nonexistence of the named payee, merely goes to the question of the employee's intent in supplying the names. Thus, evidence that the payees were bona fide creditors might lead the fact-finder to conclude that the employee did not supply the payee's names with the intention that the named payee would have no interest in the instrument. Here, there is evidence that the named payees were bona fide creditors and there is evidence that Rix supplied the names

with no intention that the named payees would have an interest in the instruments. A question of fact must be resolved to determine the applicability of I.C. 26–1–3–405(1)(c).

The majority affirms the trial court judgment because "Hartford did not designate any evidence showing that the payees of the checks had submitted invoices, requested payment, or knew that any payment was due and owing from Wells." Maj. op. at 35. Hartford did designate evidence that the payees were bona fide customers who were owed the money represented by the checks endorsed by Rix. I believe that is sufficient to create a question of fact as to Rix's intent in supplying the names of the payees to Wells. Consequently, the trial court erred in granting summary judgment.